**NUSSBAUM GILLIS & DINNER, P.C.**
14850 N. SCOTTSDALE ROAD, SUITE 450
SCOTTSDALE, AZ 85254
TELEPHONE (480) 609-0011
FACSIMILE (480) 609-0016
Dean M. Dinner, #10216
ddinner@ngdlaw.com
*Attorneys for Creditor James R. McDowell*

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| In re: | In Proceedings Under Chapter 11 |
|---|---|
| GREEN VALLEY HOSPITAL, LLC | Case No. 4:17-bk-03353-SHG |
| Debtor. | **PRELIMINARY LIMITED OBJECTION TO EMERGENCY EX PARTE MOTION FOR DEBTOR IN POSSESSION FINANCING** |
| | Hearing Date: April 6, 2017<br>Time: 3:00 p.m. |

James McDowell ("McDowell"), a creditor and party in interest, through undersigned counsel hereby files this limited objection to the Debtors' Emergency Debtor in Possession Financing Motion ("DIP Motion")[DE 7].[1] McDowell objects to the DIP Motion[2] on grounds that include the following:

---

[1] Since this case and its two affiliated cases have just been filed with hundreds of pages of first day motions McDowell is filing this preliminary objection but reserves the right to assert any and all other objections to the DIP Motion that he believes are applicable. Further, nothing herein should be considered a waiver or release of McDowell's claims, rights or interest.

[2] Green Valley Hospital, LLC ("GVH"), GV Hospital Management, LLC ("Management") and GV II Holdings LLC ("GVII"), debtors and debtors-in-possession (collectively, the "Debtors"). This Objection applies to each of the related DIP Motion's any the other Debtors cases.

a) The DIP Loan[3] fails to provide for payment of approximately $1.9 million of pre-petition employment taxes including trust fund taxes;

b) The DIP Loan improperly provides for payment in full of the Artemis loan, which is subject to dispute on grounds that Artemis improperly released $1.9 million held in escrow to pay payroll taxes;

c) Debtors haven't provided a copy of the Reorganization Proposal to other parties or the Court raising the question of whether this is simply a loan to own financing arrangement;

d) Any order approving the financing should preserve all claims, causes of action, and other rights against Artemis, Dr. Jacque Sokolov ("Sokolov"), SSB Solutions, Inc., a California corporation ("SSB"), Morris C. Aaron ("Aaron"), MCA Financial Group, Ltd., an Arizona corporation ("MCA"), (collectively, the "Consultants") for the benefit of creditors of Debtors. The DIP Loan Collateral excludes avoidance actions but may include other claims, causes of action and rights against third parties; and

e) Additional information should be provided regarding the Lender and any connections it/they have to Debtors, Consultants, or any insiders or affiliates of Debtors.

This Objection is more fully supported by the attached Memorandum of Points and Authorities.

**MEMORANDUM OF POINTS AND AUTHORITIES**

I. Background

A. Hospital Formation.

---

[3] Except as otherwise set forth herein defined terms are the same as set forth in the DIP Motion.

Debtors own and/or operate the Green Valley Hospital ("Hospital"), a licensed and general acute care hospital. However, the Hospital and its campus were originally developed by McDowell Enterprises, LLC and its affiliates. Upon opening of the hospital CEO's and CFO's, not affiliated with the McDowell's, oversaw the operations of the Hospital. In 2016, GVH was owned by Green Valley Medical Center Holdings, LLC, as to a 60% interest, McDowell Family Properties, LLC as to a 24.5% interest, and various investors, as to the remaining 15.5% interest. McDowell Enterprises, LLC, an Arizona limited liability company, was GVH's Manager, and J.R. McDowell Real Estate, Inc., an Arizona corporation, was the Manager of McDowell Enterprises, LLC. James R. McDowell ("*McDowell*") was President of J.R. McDowell Real Estate, Inc.

B. Initial Financing of the Hospital.

In 2016, the Hospital was encumbered by (a) an acquisition and development loan in the original principal amount of $56,000,000 held by Green Valley Medical Investments, LLLP ("*GCF*"), an Arizona limited liability limited partnership (the "*GCF Loan*"), and (b) an equipment loan and an FF&E loan in the total principal amount of $11,729,599, held by SQN Asset Finance (Guernsey) Limited, a Guernsey company ("*SQN*").

C. Restructuring and the Artemis Loan.

On August 15, 2016, GVH engaged the Consultants, Chairman and CEO of SSB, a national, healthcare management, development and investment firm; and on August 11, 2016, GVH engaged Aaron, Senior Managing Director of MCA, a financial consulting firm, to assist and advise GVH in improving the profitability of the struggling Hospital.

Thus, beginning in August, 2016, the Consultants, including Sokolov and Aaron, took control

3

of GVH's operations. In performing their consulting duties, the Consultants determined the amounts necessary to bring current the certain tax liability, including approximately $1.2 million in unpaid trust-fund payroll taxes due and owing by GVH regarding the operation of the Hospital for the second quarter ("2nd Qtr.") and third quarter ("3rd Qtr.") of 2016 (the "Trust Fund Liability") and unpaid payroll taxes for the same periods.

Ultimately, the Consultants determined that, with an adequate bridge loan, it would take about six months to stabilize the Hospital. The Consultants determined the amounts necessary to (a) bring current the delinquent tax liability, then in the aggregate amount of approximately $1,923,645 (b) pay critical accounts payable in the amount of $1,446,553; (c) cover anticipated shortfalls during that six-month period in the estimated amount of $674,268; (d) establish an operations reserve in the amount of $1,315,359; (e) reimburse Medicare in the amount of $162,202; and (f) cover existing loan interest payments over the six-month period.

Based on the foregoing numbers, MCA negotiated the terms and conditions of a bridge loan (the "*Loan*") with Artemis Realty Capital Advisors, LLC ("*Artemis*"), a Delaware limited liability company, in the amount of $9,000,000, with a one-year term.

As a condition of Artemis's agreement to make the Loan, and of GCF's agreement to subordinate its Deed of Trust as required by Artemis, (a) McDowell and his son and daughter-in-law personally guaranteed portions of the Loan, (b) McDowell Family Properties, LLC and Green Valley Medical Center Holdings, LLC agreed to relinquish their ownership interest in GVH after the closing date of the Loan, and (c) McDowell Enterprises, LLC agreed to resign as Manager of GVH after the closing date of the Loan.

During the transition period, leading to McDowell relinquishment of its' equity, MCA was placed in control including providing "[d]etailed budget and cash management controls will be in place managed by MCA".

4

A material inducement for McDowell to relinquish his interest in the Hospital, and to personally guaranty the Loan knowing he was relinquishing his interest in the Hospital, was that MCA, Aaron and Artemis all agreed that a portion of the Loan proceeds would be used to pay off the Tax Liability.

In pertinent part, the September 29, 2016, Loan Agreement for the Loan, executed by Artemis as Lender; GVH as Borrower; and McDowell Family Properties, LLC, McDowell, Trevor McDowell and Shannon N. McDowell, as Guarantors, provided as follows:

> At Recitals, Section 1.02, the Loan Agreement provided that the Loan proceeds "will be used" to, among other things, establish a "Payment Plan Escrow".
>
> Section 2.08 of the Loan Agreement provides, in pertinent part, as follows:
>
> At the Closing, Lender *shall* establish a **Payment Plan Escrow** (herein so called) in the amount of One Million Nine Hundred Twenty Three Thousand Six Hundred Forty Five Dollars ($1,923,645.00) to fund payments to be made pursuant Payroll Payment Plan. (Italics added.)
>
> At Section 2.10, the Loan Agreement called for the establishment of a Professional Fees Escrow through which the Consultants and legal counsel would be paid $900,000 for six months' work. Artemis reserved the right to disburse the funds to the professionals directly or to MCA for further disbursement to the professionals.
>
> Pursuant to Section 2.6, the Loan Agreement called for an initial advance of $6,750,000 (the "*Initial Advance*"),[4] which was required to be used to pay the Loan fees, and to establish an interest reserve, the Payment Plan Escrow, the Critical Accounts Payable Escrow and the Professional Fees Escrow. The balance of the Initial Advance was to be used by the Borrower in strict accordance with the Source and Use Exhibit.

In sum, the Loan Agreement plainly states that a Payment Plan Escrow *will be* established, and that the Initial Advance *shall be* used to fund the Payment Plan Escrow.

---

[4] Pursuant to Section 2.13 of the Loan Agreement, GVH would need to apply for the balance of the Loan, $2,250,000, which Artemis could disburse or not in its sole and absolute discretion.

5

On November 4, 2016, GCF exercised its option to acquire the ownership interest of McDowell Family Properties in GVH, and the vast majority of the ownership interest of Green Valley Medical Center Holdings, LLC in GVH.

### D. Improper Distribution and Usage of Tax Escrow Funds

Following the exit of McDowell Enterprises, LLC as a manager of GVH, McDowell, through counsel, made a number of inquiries to MCA regarding whether the tax liability had been paid from escrow. The responses ranged from telling him that a payment plan was being negotiated with the IRS, but telling McDowell he didn't have any interest in the loan, to a November 18th letter saying that a proposal was being made that would pay the delinquent payroll taxes in full.

Despite the representations and the specific funding of the Payment Plan Escrow earmarked to pay the tax liability, the entire amount was paid out by Artemis to GVH, controlled by the Consultants, for purposes of covering operating shortfalls. For its part, Artemis knew the tax liability existed, knew the amount, knew the Hospital was in negotiations with the IRS, and knew that $1.9 Million of the Loan proceeds was to be used to pay the tax liability. Nonetheless, in breach of the Loan Agreement it drafted, and upon which McDowell relied, Artemis gave the money to the Consultants that controlled GVH at Artemis's direction, knowing that the Consultants planned to use the funds to pay their own fees and other operating expenses.

In failing to pay the tax liability from the Payment Plan Escrow, Artemis and Consultants breached their respective agreements and duties. They exposed the Debtors and their estates to continuing tax liability, including, additional penalties and interest, and exposed McDowell to potential significant tax liability. As a result, funds should be withheld, in escrow, from any

6

Case 4:17-bk-03353-SHG    Doc 28    Filed 04/06/17    Entered 04/06/17 11:27:55    Desc
Main Document    Page 6 of 8

payment to Artemis of the DIP Loan funding in an amount of not less than the Payment Plan Escrow amount ($1,923,645.00), plus accrued penalties and interest for payment of the tax liability, including the Trust Fund Liability.

Additionally, as noted above The DIP Loan Collateral excludes avoidance actions but may include other claims, causes of action and rights against third parties. All claims, causes of action, and other rights of Debtors against the Consultants and Artemis should be preserved for the benefit of creditors of Debtors and should <u>not</u> be part of the collateral under the DIP Loan. Further, any order approving the financing should make clear that it doesn't constitute a release or waiver of any claims, causes of action, or rights against the Consultants

E. <u>Information about the Lender and Reorganization Proposal.</u>

The DIP Motion provides virtually no information about the proposed Lender. The Senior Secured Super Priority Debtor in Possession Credit Agreement appears to anticipate other investors being participants in this loan. Information should be provided regarding the Lender and any connections it/they have to Debtors, Consultants, or any insiders or affiliates of Debtors; Lenders experience in lending to hospitals and health care providers. The creditors have a right to know if there is a proposed sale in prospect which may not pay anything to unsecured creditors. Information regarding a Reorganization Proposal should be shared so creditors can evaluate the nature and purpose of the proposed financing. If this is really just a loan to own proposal then other creditors and parties in interest should be informed of such information.

DATED this 6th day of April 2017.

**NUSSBAUM GILLIS & DINNER, P.C.**

By */s Dean M. Dinner*
   Dean M. Dinner
   *Attorneys for Creditor James R. McDowell*

7

**COPY** of the foregoing mailed
this 6th day of April 2017 to:

Forrester & Worth, PLLC
3636 North Central Avenue, Suite 700
Phoenix, Arizona 85012
scf@forresterandworth.com
jrw@forresterandworth.com
*Attorneys for Debtor*

Larry L. Watson
Office of the U.S. Trustee
230 North First Avenue, Suite 204
Phoenix, AZ 85003-1706
larry.watson@usdoj.gov


Jody A. Corrales
jcorrales@dmyl.com
mfelix@dmyl.com
*Attorneys for Padmon, LLC*

Steven D. Jerome
sjerome@swlaw.com
docket@swlaw.com
mminnick@swlaw.com
*Green Valley Medical Investments, LLP*

Alisa C. Lacey
Alisa.lacey@stinson.com
Anne.finch@stinson.com
Lindsay.petrowski@stinson.com
*Attorneys for Cerner Corporation*

Robert A. Shull
rshull@dickinsonwright.com
csabori@dickinsonwright.com
*Attorneys for Artemis Realty Capital Advisors, LLC*

Kelly Singer
Kelly.singer@squirepb.com
Wendy.anderson@squirepb.com
*Attorneys for Lateral US Credit Opportunities Fund, LP*

Robert M. Charles, Jr.
Susan M. Freeman
rcharles@lrrc.com
sfreeman@lrrc.com
*Attorneys for SCM Specialty Finance Opportunities Fund, LP*


*/s/ Sandra E. Dousdebes*

8

1465281/18386-1
Case 4:17-bk-03353-SHG    Doc 28    Filed 04/06/17    Entered 04/06/17 11:27:55    Desc
Main Document    Page 8 of 8